# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : | |
| --- | --- | --- |
| | : | 3:17-CR-396 |
| v. | : | (JUDGE MANNION) |
| FREDERICK BROWN, | : | |
| Defendant | : | |

## MEMORANDUM

Pending before the court is defendant Frederick Brown's motion to suppress statements pursuant to Fed.R.Crim.P. 12(b), that he allegedly made to law enforcement officers on two separate occasions. (Doc. 41). Brown is charged with offenses related to sex trafficking and drug trafficking. Brown seeks the court to suppress his incriminating statements alleging that the officers intimidated, threatened and coerced him into waiving his *Miranda*[1] rights without even reading him those rights. Brown contends that both of his statements should be suppressed under the 5th and 6th Amendments since he was in custody and being interrogated but was not advised of his *Miranda* rights. He also contends that the officers forced him to sign a form indicating that he had been advised of his *Miranda* rights and, that he knowingly, intelligently and voluntarily waived those rights.

---

[1] The *Miranda* rights refer to the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), informing a suspect of the right to be silent and the right to counsel in a custodial interrogation.

Brown also requested an evidentiary hearing. (Doc. 63). The court granted Brown's request for a hearing since there were factual disputes at issue regarding the validity of the statements Brown made to the officers and whether he was advised of his *Miranda* rights and properly waived his rights. (Doc. 71).

For the reasons enumerated on the record following the hearing and discussed below, Brown's suppression motion will be **DENIED IN ITS ENTIRETY**.

I.  **FACTUAL BACKGROUND**

Brown moves to suppress incriminating statements that he made during two separate interviews by FBI Task Force Officers ("TFOs"). The first interview was conducted on December 7, 2017, by TFOs Christopher Lynch and William Patton, during Brown's incarceration for state convictions at SCI-Rockview, and prior to his arrest and the filing of the indictment in the instant case charging him with sex trafficking and drug trafficking. The second interview was conducted on January 3, 2018, following his indictment and arrest on the instant charges, during his transportation from SCI-Rockview by TFOs Patton and Chris Shelly for his initial appearance (Rule 5 hearing) and his arraignment before this court.[2] Brown contends that he was in custody and

---

[2]On December 19, 2017, Brown was charged in a four-count Indictment with sex trafficking by force and coercion in violation of 18 U.S.C. §§1591(a) and (b)(1); sex trafficking of a minor by force and coercion in violation of 18 U.S.C. §§1591(a) and (b)(1); conspiracy to distribute and possess with intent

2

being interrogated regarding his statements during both of the interviews and that he was forced by the TFOs to waive his rights. Brown also contends that the TFOs falsified the statements they alleged he made.

On August 25, 2018, Brown filed his counseled motion to suppress statements. (Doc. 41). The motion has been briefed and exhibits have been submitted.

The court conducted an evidentiary suppression hearing on March 11, 2019, and heard the testimony of TFO Patton and from defendant Brown. Evidence was also submitted which was admitted by the court.

## II. LEGAL STANDARD

In U.S. v. Whiteford, 676 F.3d 348, 362 (3d Cir. 2012), the Third Circuit explained:

> The decision to waive one's Fifth Amendment rights must be the product of "a deliberate choice to relinquish the protection those rights afford." Berghuis v. Thompkins, 560 U.S. 370, 130 S.Ct. 2250, 2262 (2010). A court will inquire first, whether "the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice," and second, whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986).

In United States v. Hodge, 2017 WL 1345219, *13 (D.V.I. Feb. 24,

---

to distribute 280 grams or more of crack cocaine in violation of 21 U.S.C. §846; and possession with intent to distribute 280 grams or more of crack cocaine in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(A). (Doc. 1).

2017), the court discussed a waiver of rights and stated:

> To determine whether *Miranda* rights have been voluntarily, knowingly, and intelligently waived, courts must "consider the totality of circumstances surrounding [the defendant's] statement." <u>Briscoe</u>, 69 F. Supp. 2d at 741 (quoting <u>United States v. Tyler</u>, 164 F.3d 150, 158 (3d Cir. 1998)) (quotations omitted). Courts also must consider "the background, experience, and conduct of the [defendant], as well as any indicia of coercion." Id. (citing <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1046 (1983)) (internal citations omitted). Examples of "traditional" indicia of coercion are the duration and conditions of detention, the attitude of the interrogators, the defendant's physical and mental state, and other pressures affecting the defendant's powers of resistance and self-control. Id. at 741 n.1. "*Miranda* rights will be deemed waived only where the totality of the circumstances reveals both an uncoerced choice and the requisite level of comprehension." <u>United States v. Sriyuth</u>, 98 F.3d 739, 749 (3d Cir. 1996) (quoting <u>Alston v. Redman</u>, 34 F.3d 1237, 1253 (3d Cir. 1994)).

### III. DISCUSSION

This court has jurisdiction over Brown's motion to suppress under 18 U.S.C. §3231.

Brown moves to suppress his incriminating statements under the 5th and 6th Amendments with respect to his pre-arrest interview at SCI-Rockview and, with respect to his post-indictment and pre-arraignment interview during the ride to bring him for his initial appearance before this court. He argues all of his alleged incriminating statements made during both interviews should be suppressed because his *Miranda* waiver was not valid and, because his statements to the TFOs were involuntary and forced by threats and coercion.

On December 7, 2017, while he was incarcerated at SCI-Rockview and

4

before he was charged in this case, Brown was interviewed by investigators, namely, TFOs Patton and Lynch, after they identified themselves, in a secure room away from other inmates and prison staff for security reasons. Brown was obviously in state custody at the time but he was not handcuffed. TFO Patton, a law enforcement officer with 25 years experience, testified that before discussing anything with Brown he advised Brown of his *Miranda* rights and read them from a standardized form, number FD-395, entitled "Federal Bureau of Investigation Advice of Rights." Brown then signed the "Advice of Rights" form below the words "CONSENT - I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." TFOs Patton and Lynch also signed the form as witnesses to the wiaver. (Doc. 66-1, Gov. Ex. 1).

The TFOs told Brown that his name had come up in an investigation involving sex trafficking and drug trafficking activity at the Howard Johnson hotel in Bartonsville, PA, and asked Brown if he was aware of illegal activities at the hotel. Brown was shown photographs of several people and he identified some of the individuals and provided information about them. Brown also indicated that he knew the general manager of the hotel, Faisal Bhimani, was recently arrested, and that he knew Bhimani. Brown also admitted that he had been a frequent guest at the Howard Johnson hotel. Brown then made incriminating statements about his, and other individuals', drug and prostitution activities at the hotel as well as the activities of Bhimani to assist him and the other individuals who also operated out of the hotel. Brown also

5

made admissions about sex trafficking victims.

Although Brown stated that he was not a pimp, he admitted to receiving money from the women for rides and for security, having sex with at least four of the women, supplying them with drugs, using drugs with them, and staying with them at the hotel. Brown also admitted to selling crack and marijuana at the hotel, and that one woman sold marijuana for him. He even provided specifics regarding the amounts of crack that he sold, how often the sales occurred, and to whom he sold the crack. In particular, Brown admitted that he sold about seven grams of crack per week at the hotel for 18 months.

TFO Patton testified that during the December 7, 2017 interview, Brown never stated that he wanted to stop the interview and he did not ask for an attorney. Brown admitted during his testimony that he did not refuse to sign the form with the *Miranda* rights, that he did not ask for an attorney at any time, and that he did not state that he wanted to stop the interview. Patton also stated that Brown was not intimidated during the interview and that the tone was "professional and subdued."

TFO Patton took notes during Brown's December 7, 2017 interview. After the interview, Patton then prepared a 302 report based on his notes memorializing Brown's statements. At the hearing, Patton's notes and 302 report were admitted into evidence. (Govt. Exs. 2 & 3). Brown admitted that portions of Patton's report were accurate, but he claimed that some parts were fabrications.

Brown testified that prior to signing the *Miranda* rights form, he

6

mentioned that he was up for parole on his state convictions in January 2018, and that he had a meeting with a parole officer later that same day. Brown stated that Patton then asked him where he was going to live if he was released. Brown told Patton that he was going to reside in Monroe County, and he testified that Patton indicated he was in "good favor" with parole officers in Monroe County and that his interview would influence his parole. Brown also testified that Patton did not read him the *Miranda* rights from the form, but he admitted that he read the form before he signed it. Brown further stated that before his signed the form, he asked Patton if he was in trouble and that Patton responded "No, you're a possible witness." As such, Brown stated that he thought that he did not need a lawyer for the interview so he did not request one. Additionally Brown stated that the TFOs did not tell him why they were interviewing him until after he signed the form.

On cross-exam, Brown admitted that he was arrested multiple times on felony drug charges dating back to 2005, long before the December 7, 2017 interview, and that he was well-aware of the *Miranda* rights.

The second incriminating statements Brown allegedly made occurred on January 3, 2018, when TFOs Patton and Shelly transported Brown from SCI-Rockview to the federal courthouse in Scranton, PA, for his initial appearance and arraignment. TFO Patton had a warrant for Brown's arrest and he informed Brown of the federal indictment filed against him. Brown testified that he already knew that the federal indictment was filed against him since he asked his prison counselor to check for an indictment in his file a day

7

earlier. Patton stated that he then again advised Brown of his *Miranda* rights and Brown indicated that he understood his rights. However, Brown was not asked to sign another "Advice of Rights" form since he was handcuffed in the back seat of the vehicle. TFO Shelly and Patton both signed the form as witnesses to the consent. The January 3, 2018 "Advice of Rights" form was admitted into evidence as Government Exhibit 4. Brown testified that he was not read his *Miranda* rights when Shelly and Patton picked him up at the prison and that he was not read his rights at any time during the ride.

      TFOs Patton and Shelly then began a conversation with Brown and occasionally asked him questions during the approximate 2-hour drive. Patton testified that Brown voluntarily participated in the interview, that Brown did not ask for an attorney, and that Brown never indicated he did not want to talk. According to Patton, Brown was questioned about his activities at the Howard Johnson hotel and he told Brown that they were aware of his sex and drug trafficking activities. Brown then made incriminating statements regarding his federal charges, including some of the information he previously gave to officers during his first interview. Patton told Brown that several people had provided information about him in which he was identified by the street names "G" and "Freddy Mac." Brown admitted that he used the two aliases. Brown also told the TFOs that he knew he could operate his drug and prostitution activities out of the hotel without fear of reprisal. He also gave the TFOs new information, such as his admission that he first met two of the sex trafficking victims when they were under the age of 18.

Additionally, Patton stated that while Brown admitted to some involvement with sex and drug trafficking during the ride, he denied his involvement with other activities.

TFO Patton also took notes during Brown's January 3, 2018 interview while Shelly drove the vehicle. After the interview, Patton prepared a 302 report on January 17, 2018 based on his notes from the ride. At the hearing, Patton's 302 report was admitted into evidence but Patton explained that he had lost his original notes sometime after he prepared the report. (Govt. Ex. 5).

There is no dispute that during both interviews Brown was in custody and that the TFOs were required to advise him of his *Miranda* rights. Because he was in custody, Brown had the right to counsel before both interviews began but he could waive that right as well as his other *Miranda* rights. Brown contends that even though he was given *Miranda* rights prior to the December 7, 2017 interview, the waiver form he signed was due to intimidation and coercion by the TFOs as well as reassurances from Patton that he was not in trouble and promises that he could help with Brown's state parole. Brown contends that he was never given *Miranda* rights when the TFOs picked him up at the prison on January 3, 2018.

After hearing the testimony of the witnesses and reviewing the evidence, the court finds that Brown was in fact given his *Miranda* rights before both interviews and that Brown's *Miranda* waiver, on both occasions in which he gave incriminating statements, was voluntary, was knowingly

made and was the result of his deliberate choice. The court also finds that TFO Patton accurately reported the incriminating statements Brown made during both interviews.

Moreover, the testimony of TFO Patton is more credible than Brown's testimony and the court finds that Brown was not threatened or coerced into signing the waiver form and that no promises were made to him as he now claims. "[I]t is well-settled that, at a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge.'" U.S. v. Wadley, 2007 WL 4593508, *2 (W.D.Pa. Dec. 28, 2007) (citing U.S. v. Richardson, 501 F.Supp.2d 724, 734 (W.D.Pa. 2007).

Brown is obviously an intelligent adult person who can understand his rights, and he can read, speak and write English. As such, "his level of education would have enabled him to read the [*Miranda* rights] form and comprehend its meaning." Whiteford, 676 F.3d at 362 (citing Berghuis, 130 S.Ct. at 2262 (holding a *Miranda* waiver was valid when the defendant "received a written copy of the *Miranda* warnings ... could read and understand English ... [and] was given time to read the warnings")). There is no dispute that Brown signed the waiver form on December 7, 2017. Additionally, Brown was well-familiar with *Miranda* rights based on his previous arrests and convictions. Further, it is of no moment that Brown was not yet charged when the TFOs interviewed him at SCI-Rockview since in the

*Whiteford* case, the Third Circuit found that even though the agents did not inform the defendant of the specific charges against him, he failed to show that his "will was overcome or [his] capacity for self-control vitiated." Id. (citing United States v. Velasquez, 885 F.2d 1076, 1089 (3d Cir. 1989)). The Court in *Whiteford* also stated that it was not aware of any authority "holding that a defendant must know of the charges against him to validate a *Miranda* waiver." Id.

Additionally, even though Brown did not yet have counsel in this case, there is no evidence that he requested to consult with an attorney before speaking to the TFOs at the prison. *See* Whiteford (defendant must make "an objectively identifiable request for counsel" to invoke his Fifth Amendment rights.) (citing Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350 (1994)). In fact, TFO Patton testified that during the lengthy interview with Brown at the prison, he did not request an attorney at any time and he did not invoke his right to remain silent. Brown also admitted this during his testimony.

Based on the totality of circumstances regarding Brown's Mirandized statements given on December 7, 2017 at SCI-Rockview, the court finds that the government has met its burden of establishing Brown's waiver was valid since it was voluntary and the result of his free and deliberate choice and not the result of threats or coercion or promises. Brown was fully advised of the rights he was waiving and the consequences of his decision to waive them.

Likewise, based on the totality of circumstances regarding Brown's post-

11

indictment and pre-arraignment interview on January 3, 2018, during his transportation for his initial appearance, the court finds that the government has met its burden of establishing Brown's waiver of the *Miranda* rights was voluntary and the result of his free and deliberate choice. Brown aware that he was indicted on the instant federal charges prior to the ride and he knew why he was being taken to federal court.

There is no credible evidence that Brown was threatened or coerced by the TFOs or that any promises were made to him in order to cajole him into making statements. Further, Brown was verbally advised of his rights when TFO Patton read from the same standardized FBI form that Brown previously signed. Brown then verbally acknowledged his rights. At no time during the ride did Brown request an attorney or indicate that he wished to stop the interview. Brown then voluntarily responded to the TFOs' questions. Further, as the government states, "[t]he fact that Brown had been indicted and was being transported from state prison to the federal courthouse for an initial appearance does nothing to change the *Miranda* requirements; this is exactly the same as when an indicted defendant is arrested on the street under warrant."

"[A] post-indictment, uncounseled confession must have been voluntarily given after a valid waiver of the right to counsel." United States v. Lewis, 322 F.Supp.3d 579, 586 (M.D.Pa. 2018) (citing United States v. Brown, 699 F.2d 585, 588 (2d Cir. 1983)). In Riddick v. Edmiston, 894 F.2d 586, 591 (3d Cir. 1990), the defendant was arrested but he did not know that he had

been indicted when he made inculpatory statements to officers. The officers advised defendant Riddick of his *Miranda* rights and then questioned him about the underlying charge in his indictment.

The Third Circuit in Riddick, *id*., stated,

> The rationale for the Supreme Court's holding in *Patterson* that *Miranda* warnings are sufficient to waive counsel for post-indictment questioning has several prongs. In the first place, the Court pointed out that *Miranda* warnings make it clear that an accused has a right to consult with an attorney, to have one present during questioning and, if necessary, to have one appointed at state expense. They "conveyed to [the accused] the sum and substance of the rights that the Sixth Amendment provided him." Second, *Miranda* warnings inform an accused of the consequences of a decision to speak to law enforcement officials without counsel; namely, that any statement he makes can be used against him in later criminal proceedings. Finally, *Miranda* warnings let the accused know what an attorney can do during post-indictment questioning; namely, advise him to speak or remain silent.

(citing Patterson v. Illinois, 487 U.S. 285, 293 (1988)).

Thus, even though Brown's 6th Amendment right to counsel attached, based on the indictment of which Brown was aware, during his ride to federal court, his post-indictment interview did not violate his 6th Amendment right since the court finds that he knowingly and intelligently waived that right. *See* Lewis, 322 F.Supp.3d at 591-92.

## III.  CONCLUSION

Based on the foregoing, the court finds that Brown's statements to the TFO's during both of his interviews were made after he was given *Miranda*

rights and, after he knowingly and intelligently waived those rights. Thus, Brown's motion to suppress his statements, (Doc. 41), will be **DENIED IN ITS ENTIRETY**. An appropriate order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 15, 2019**