**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

FREDRICK BROWN,                           :

        Petitioner            :        CRIMINAL NO. 3:17-396

        v.                        :            (JUDGE MANNION)

UNITED STATES OF AMERICA        :

        Respondent            :


## MEMORANDUM

Pending before the court is petitioner Fredrick Brown's Motion to Vacate, Set Aside, or Correct his 396-month sentence of imprisonment[1] imposed on July 23, 2019. (Doc. 145). Brown is currently serving his prison sentence at SCI Rockview in Pennsylvania alongside his state conviction. Brown's motion is filed pursuant to 28 U.S.C. §2255 and is based upon claims of ineffective assistance of counsel as well as violations of due process rights, prosecutorial misconduct, and lack of jurisdiction.

On December 19, 2017, a four-count indictment was returned against Fredrick Brown. (Doc. 1). Count One charged Brown with Sex Trafficking by Force and Coercion and alleged that from in or about 2011 to in or about

---

[1] More specifically, Brown is serving a 396-month sentence after being sentenced to three 396-month sentences and one 360-month sentence, which are all being served concurrently.

2014, Brown "did knowingly recruit, entice, harbor, transport, provide, advertise, patronize, solicit, and obtain multiple victims by any means in and affecting interstate commerce, knowing and in reckless disregard of the fact that force, threats of force, fraud, and coercion would be used to cause multiple victims to engage in commercial sex acts. All in violation of Title 18, United States Code, Section 1591(a), (b)(1)." *Id.*

Count Two charged Brown with Sex Trafficking of a Minor by Force and Coercion and alleged that from in or about 2011 to in or about 2014, Brown "did knowingly recruit, entice, harbor, transport, provide, advertise, patronize, solicit, and obtain Victim 1 by any means in and affecting interstate commerce, knowing and in reckless disregard of the fact that force, threats of force, fraud, and coercion would be used to cause Victim 1 to engage in commercial sex acts, and knowing and in reckless disregard of the fact that Victim 1 was under the age of 18 years, and having had a reasonable opportunity to view Victim 1. All in violation of Title 18, United States Code, Section 1591(a), (b)(1)." *Id.*

Count Three charged Brown with Drug Trafficking Conspiracy and alleged that from in or about 2011 to in or about 2014, Brown "knowingly and intentionally combined, conspired, confederated, and agree with other persons known and unknown to the Grand Jury to distribute and possess

with intent to distribute 280 grams and more of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A). All in violation of Title 21, United States Code, Section 846." *Id.*

Count Four charged Brown with Possession with Intent to Distribute a Controlled Substance and alleged that from in or about 2011 to in or about 2014, Brown "did knowingly and intentionally possess with intent to distribute 280 grams[2] and more of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance. In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)." *Id.*

During the course of the trial, amendments to the indictment were made, which will be discussed below. On March 15, 2019, a jury rendered a guilty verdict on all four counts. (Doc. 98).

A sentencing hearing before this court was held on July 23, 2019. Brown was sentenced to 396 months imprisonment on each of Counts One, Two, and Three, and 360 months imprisonment on Count Four, to run concurrently, followed by a 10-year term of supervised release. (Doc. 129).

---

[2] The Government moved to drop the quantity allegation on Count Four before the case went to the jury.

Thereafter, Brown filed his instant 28 U.S.C. §2255 motion to vacate, set aside, or correct his sentence, (Doc. 145), and the Government filed its brief in opposition to Brown's motion, (Doc. 154).

Upon the court's review of the record in this case, Brown's §2255 motion, (Doc. 145), as well as the briefs of the parties, Brown's motion will be **DENIED** without the need for an evidentiary hearing.

## I.   LEGAL STANDARD

When a district court imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see United States v. Eakman*, 378 F.3d 294, 297-98 (3d Cir. 2004).

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice of thereof to be served upon the United States Attorney, grant a prompt hearing

- 4 -

thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).

A §2255 motion "is addressed to the sound discretion of the district court." *United States v. Williams*, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." *Paulino v. United States*, 2010 WL 2545547, *2 (W.D. Pa. June 21, 2010) (citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Bates*, 2008 WL 80048, *2 (M.D. Pa. Jan. 7, 2008) (quoting *Mallet v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." *United States v. Ayers*, 938 F.Supp.2d 108, 112 (D. D.C. 2013) (citation omitted). Brown's instant claims fall within the purview of §2255 since they challenge the validity of his sentence. *Bates*, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether

the movant could have asserted the claim on direct appeal.") (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

Additionally, "Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing", "[r]ather, Section 2255 is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Williams v. United States*, 2016 WL 6892375, *2 (M.D. Pa. Nov. 22, 2016) (internal citations omitted).

## II.   DISCUSSION

This court has jurisdiction over Brown's motion under §2255 pursuant to 28 U.S.C. §§1341 and 2241.

In his §2255 motion, Brown makes claims that break down into four categories. First, that his counsel provided ineffective assistance for a multitude of reasons. (Doc. 145 at 4-5). Second, that his due process rights were violated, again pointing to a slew of alleged facts. *Id.* Third, that there was prosecutorial misconduct on the part of the Assistant United States Attorneys. *Id.* at 9-11. And fourth, that the court lacked jurisdiction. *Id.* at 12. Each category will be addressed below.

### A.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. Amend. VI. The U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," *id.* at 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.*, 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *cf. United States v. Valenzuela-Bernal*, 458 U.S. 858, 866–67 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.*, 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.*, 694.

Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." *Ayers*, 938 F.Supp.2d at 113 (citing *Strickland*, 466 U.S. at 700).

Here, Brown raises several claims of ineffective assistance of counsel, all of which fail to meet the standard under the *Strickland* test. Simply, even if Brown's claims were all true his counsel's performance neither fell below

an objective standard of reasonableness nor prejudiced the defense. The right to effective assistance of counsel does not mean that the court must "guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." *Roe v. Flores Ortega*, 528 U.S. 470, 485 (2000).

Brown's claims range from frivolous to untrue to unspecific, but all fail to satisfy his burden under *Strickland*. Claims such as, *e.g.*, "counsel lacked knowledge of applicable federal law," "failed to maintain adversarial presence," "failed to maintain client['s] innocence," "failed to interview both character witnesses who were subpoenaed on behalf of court," and "failed to object to AUSA's opening/closing," are unsubstantiated and generally without any legal merit. (Doc. 145 at 4-5).

Other claims such as "failed to object to an improper enhancement for a weapon not charged in the indictment nor did he have any defense to negate actual existence" are demonstrably false. *Id.* at 4. Further, Brown's claims that counsel "failed to file a motion to arrest judgement," "failed to attack the indictment for lack of specificity," "failed to object to the amending of the indictment twice," and "failed to challenge the issue of timeliness on Motion in Limine" are claims that, even if established as true and relevant, would not result in a different outcome to the case. *Id.* at 4-5.

Brown's claims that counsel "failed to properly impeach witnesses" and "failed to investigate/request valuable information in support of client['s] testimony regarding the time of interview on Dec. 7, 2017, for the Suppression Hearing" are conclusory and lack specificity and are thus not actionable claims. *Id.* at 5; *see also Johnson v. United States*, 294 F.App'x 709, 710 (3d Cir. 2008) ("vague and conclusory allegations contained in a §2255 petition may be disposed of without further investigation by the District Court"). Finally, Brown claims that his counsel "failed to consult with client at multiple stages of his case. Exclusively in preparing the Appeal." *Id.* at 4. The standard for such a claim was established by the Supreme Court in *Roe v. Flores-Ortega*:

> We employ the term "consult" to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to [filing] an appeal.

528 U.S. 470, 478 (2000).

Here, Brown's counsel filed a timely appeal three days after sentencing and pursued the appeal until the Supreme Court denied *certiorari*. Even if Brown's counsel did not consult with him, Brown, to satisfy *Strickland*, "must show a reasonable probability that 'but for counsel's deficient failure to

- 10 -

consult with him about an appeal, he would have timely appealed.'" *Harman v. United States*, 2021 WL 3403534 at *3 (M.D. Pa. Aug. 4, 2021) (quoting *Roe v. Flores-Ortega*, 528 U.S. at 484). Because Brown's counsel did file a timely appeal, Brown cannot satisfy *Strickland*. Furthermore, Brown does not identify what claims he thinks his counsel should have raised on appeal nor does he identify what he should have been consulted about. Finally, he does not sustain his burden of showing how his being consulted would have resulted in a different outcome.

For all these reasons, Petitioner's motion to vacate based on claims of ineffective assistance of counsel will be denied.

## B.   Due Process

Brown brings many claims alleging violations of his due process rights. Brown's due process claims break down into three subcategories: (1) issues pertaining to the indictment, (2) issues pertaining to perjury, and (3) miscellaneous issues. Each is discussed below.

### 1.   *Issues Pertaining to the Indictment*

Brown alleges issues with the indictment that occurred both pre-trial, in presenting evidence to the Grand Jury and in drafting the indictment, and during the trial, in making amendments to it.

- 11 -

Brown claims that "[s]tatements from multiple 'victim[s]/witnesses' were not in existence to be produced to the Grand Jury" and that "[b]ased on the investigating officer[']s testimony and lack of any statement in support [of] Count #2 of the indictment obtained by actions of the Prosecution Team[,] which biased the Grand Jury in order to indict. Prosecuting team kn[ew]/should have known of any falsified statements of testimony." (Doc. 145 at 8). It is not exactly clear which witnesses Brown is referring to, nor does he state what good faith grounds he may have to allege any relevant statements were falsified. Regardless, the record in this case does not reveal any constitutional issues with how the Government presented its case to the Grand Jury. The Government produced sufficient evidence to the Grand Jury, and this was only made clearer by the trial and eventual conviction of Mr. Brown, where the evidence presented proved his guilt beyond a reasonable doubt. It is also worth noting that an indictment is merely an allegation, and the court instructed the jury as such.

Furthermore, Brown claims that the indictment was "to[o] broad to allow the defendant to be able to claim Double Jeopardy to any subsequent prosecution" and that the Government "drew up an indictment in which a statute of limitations issue should have been clear of." *Id.* However, he does not specify how the indictment was too broad. Thus, his claim is vague and

conclusory and fails to state a claim. Further, the Government acknowledged the statute of limitations issue and sought for it to be fixed by the court. (Doc. 118 at 230-231). The court remedied the issue through its jury instructions at trial. (Doc. 101 at 49, 63). Thus, it is not a basis for a motion to vacate.

With regard to conduct at trial, Brown claims that the Government's amendment to the indictment "allowing words to be stricken from counts #1 and #2 . . . [*sic*] violat[ed] the right to be tried only by an indictment returned by a Grand Jury." (Doc. 145 at 7). However, the Government's amendment of the indictment, which was agreed to by defense counsel, was to remove "surplusage," specifically the language "advertise," "patronize," and "solicit," which were added to the relevant statute after the conduct alleged in the indictment. Amendments to remove such language are permissible and aid both the jury and the defendant by striking language that is irrelevant, confusing, or prejudicial. *See, e.g., United States v. Iglesias*, 535 F.3d 150, 161 n. 4 (3d Cir. 2008) (indictment was not improperly amended where the Government struck the specific amount allegation, which was deemed surplusage, on a drug charge).

Brown also claims that there was an amendment made at trial to the indictment which "included adding an actual name to Count #2 in which it was in no way clear who victim #1 was intended to be until this amendment."

- 13 -

(Doc. 145 at 7). But this was stipulated by the Government and defense counsel, and Brown does not allege, nor could he, that this stipulation rendered his counsel ineffective. (Doc. 118 at 239-240). The record demonstrates the reason for this amendment: "Everybody understands that victim one is Anastasia Byler. That's the person who is in there. I mean, her name was not included in there for privacy purposes [because she was thought to be a minor]. But for purposes of the jury, they are entitled and required to know who it is that the information must be proven against," *Id.* at 239:17-21, and because, "there was some evidence put on with regard to the age of Serenity. I don't want [the jury] confused as to who we're talking about." *Id.* at 240:15-17. There was no constitutional error here.

Finally, Brown claims that the indictment was further amended to "conform the instrument pertaining to Counts 3 and 4, to fit within the legal statute of limitations which it was clearly outside of." (Doc. 145 at 7). While it is not entirely clear what Brown means by this, it seems that he is misunderstanding the aforementioned potential statute of limitations issue identified by the Government, which was remedied by the Court in its jury instructions. The only other issue arising from counts 3 and 4 were the "280 grams" element of Count Four. The Government conceded that element of

the charge, to Brown's benefit, and the jury did not consider it. That was not an amendment to the indictment.

### 2.    Issues Pertaining to Alleged Perjury

Brown makes several claims with regard to alleged perjured testimony provided by Government witnesses. In order to succeed on a due process perjury claim, the defendant must show: "(1) the government's witness committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." *United States v. John-Baptiste*, 747 F.3d 186, 210 (3d Cir. 2014) (citing *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004)).

Brown claims that both "the prosecution team[']s main 'victim/witness'" as well as its "investigating officer" gave perjured testimony. (Doc. 145 at 6-8). With regard to the officer, Brown claims that the "testimony provided at [the] suppression hearing and in 302(a) Report was not the same at trial in regard to voluntary statements made and the officer testifying to his own inferences being made from what was said." *Id.* at 7. This does not constitute a showing that the witness committed perjury, and Brown's counsel had ample opportunity at trial to pursue cross-examination of the prosecution's witnesses.

- 15 -

Brown does, however, make a claim worth considering with regard to "the prosecution team[']s main 'victim/witness.'" *Id.* at 6. It is more than reasonable to conclude that Brown is referencing Anastasia Byler. Brown claims that "[b]ased on newly discovered evidence of the prosecution team[']s main 'witness/victim,' there is more than enough evidence to support the reasonable likelihood [sic] that the perjured testimony affected the judgment of the jury." *Id.* The evidence being referenced is that in a subsequent trial of a different defendant, Ms. Byler realized that she was actually 18 years old when she met Brown, not 17. She corrected her testimony under oath in that trial. But Brown's conviction on Count Two, Sex Trafficking of a Minor by Force and Coercion, was based, in large part, on Ms. Byler's prior testimony that she was 17.[3] There is no indication, however, that the government knew or should have known that her testimony was false at the time of Brown's trial. Nevertheless, this new evidence, if known at the time of trial, would very likely have impacted the jury's verdict on that count.

Acknowledging that Brown's conviction based on sex trafficking of a minor may have been erroneous given the change in Ms. Byler's testimony

---

[3] It is worth noting that Brown himself also testified that he believed they met when she was 17.

in the subsequent trial, the analysis of the Court in *United States v. Ross* is

pertinent:

> We note at the outset that, had Ross challenged his conviction under section 922(o) on direct appeal, there is a fair likelihood we would have vacated that conviction and remanded for resentencing . . . He may be right that the 922(o) conviction is unlawful, but, given the current posture of the case, not every wrong is in our power to right. We are bound by the text of section 2255.

801 F.3d 374, 378 (3d Cir. 2015).

Brown's §2255 motion to vacate cannot be granted because such a

motion is not actionable where the relief sought will not change the prisoner's

custody status. 28 U.S.C. §2255(a); *see also Ross*, 801 F.3d at 378 ("not

every wrong is in our power to right. We are bound by the text of section

2255"). Even if Brown's sentence on Count Two were to be overturned, he

is still serving concurrent sentences of equal or greater length on Counts

One, Three, and Four. Thus, there is no relief available for Brown under

§2255.

### 3.   *Miscellaneous Issues*

Brown alleges that the prosecution "made references to evidence that

was not presented" and "improperly used opening statement to attack." (Doc.

145 at 13). A review of the record reveals these allegations are without merit.

Brown also claims issues with the administration of his *Miranda* rights. In so doing, he repeats his arguments which the court already rejected following a suppression hearing. *See* (Doc. 94). The court will not entertain Brown's improper use of a §2255 motion to relitigate issues that have already been decided. Brown does not demonstrate any constitutional error in the court's finding regarding *Miranda*, and thus this claim also fails.

For all the aforementioned reasons, Brown's motion to vacate based upon claims of violations of his due process rights will be denied.

### C.    Prosecutorial Misconduct

Brown alleges prosecutorial misconduct revolving around "[i]nflammatory remarks . . . such as improper suggestions, insinuations, and assertions of personal knowledge against the defendant," (Doc. 145 at 10), made throughout the trial. He further levies several complaints that lack specificity or support.

A §2255 motion alleging prosecutorial misconduct should be granted where a prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Mangiardi*, 173 F.Supp.2d 292, 303 (M.D. Pa. 2001) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Further, "[f]or due process to have been offended, the prosecutorial misconduct must be of sufficient significance to result in the

denial of the defendant's right to a fair trial." *Mangiardi*, 173 F.Supp.2d at 303 (quoting *Wests v. Vaughn*, 228 F.3d 178, 197-98 (3d Cir. 2000)).

Here, Brown fails to make a showing of prosecutorial misconduct. He makes conclusory allegations mostly lacking any specificity. Brown does allege that "[p]erjured testimony was used" and that the Government "[f]ailed to disclose *Giglio* [italics added] material of witnesses," (Doc. 145 at 11), which could potentially, if true, result in the denial of a fair trial. However, Brown, again, provides nothing beyond the allegation itself. He points to no specific witness on either claim and instead asserts in conclusory fashion that this was the case. Brown simply has not met his burden and his motion to vacate based on prosecutorial misconduct will thus be denied. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) ("vague and conclusory allegations contained in a §2255 petition may be disposed of without further investigation by the District Court").

### D.    Jurisdiction

Brown claims that "[t]he Amendment to the indictment made prior to trial left the District Court with no jurisdiction to render the judgment which it gave." *Id.* at 12. However, "defects in an indictment do not deprive a court of its power to adjudicate." *United States v. Cotton*, 535 U.S. 625, 630 (2002); *see also Short v. United States*, 471 F.3d 686, 697 (6th Cir. 2006).

Furthermore, Brown's claims regarding indictment amendments have already been considered above. Thus, Brown's claim of lack of jurisdiction because of changes to the indictment will be denied.

### III.    EVIDENTIARY HEARING

Although neither party requests an evidentiary hearing, it is worth addressing. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). *See United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992) (The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.") (citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record." *Patton v. United States*, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing *United States v. Estrada*, 849 F.2d 1304, 1307 (10th Cir. 1988)). A review of the motion as well as the law and the claims make it clear that Brown's allegations are without merit. The court

finds that Brown is not entitled to an evidentiary hearing because the record conclusively establishes that he is not entitled to the relief sought in his §2255 motion. Therefore, the court, in its discretion, finds no reason to hold an evidentiary hearing.

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Brown has not shown either the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.

**V.**     <u>CONCLUSION</u>

Based on the foregoing, the court will **DENY** Brown's §2255 motion in its entirety, (Doc. 145), without an evidentiary hearing. Further, no COA will issue. An appropriate order shall follow.


                                      *s/ Malachy E. Mannion*
                                      **MALACHY E. MANNION**
                                      **United States District Judge**

**DATE: July 21, 2023**

17-396-04

- 22 -